UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN FERRIS MOORE,

    Plaintiff,

v.                                                    Case No.  8:22-cv-2410-MSS-SPF

MARTIN O'MALLEY,
Commissioner of the Social
Security Administration,[1]

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, it is recommended that the Commissioner's decision be reversed.

**I.**

**A.    Procedural Background**

Plaintiff applied for a period of disability and DIB on August 24, 2020 (Tr. 205-06, 211).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration

---

[1] On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi, and he is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

(Tr. 77-78, 119). Plaintiff then requested an administrative hearing. Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 45-63). Following the hearing, the ALJ issued a partially favorable decision: the ALJ found Plaintiff was not disabled on her alleged onset date of August 2, 2019, but became disabled on September 7, 2021 (the day before her 55th birthday) (Tr. 23-35). Accordingly, the ALJ denied Plaintiff's claim for benefits for the period of August 2, 2019 through September 6, 2019, but found her disabled after this date (Tr. 35). Subsequently, Plaintiff requested that the Appeal Council review the portion of the ALJ's opinion that found her not disabled, which the Appeals Council denied (Tr. 1-7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

    **B.**    **Factual Background and the ALJ's Decision**

Plaintiff was born on September 8, 1966, and claimed disability beginning August 2, 2019 (Tr. 23). Shortly after graduating high school, Plaintiff opened an in-home daycare in Bloomingdale, Minnesota (Tr. 49). She operated her business as a full-time in-home childcare provider for 36 years, providing daycare and after school care for up to 12 children at a time, ranging in age from six weeks to 11 years old (Tr. 49-50). Her impairments began in May 2009, when she slipped and fell on an uneven curb, injuring her ankle. The pain did not improve despite orthopedic treatment (Tr. 537-38), so in August 2009 she sought care with a physical medicine and rehabilitation physician. Plaintiff tried numerous treatments for her pain but eventually was diagnosed with chronic

regional pain syndrome ("CRPS") (*see* Tr. 545).[2] She managed her symptoms for years while operating her daycare but slowly began relying on her retired husband to help with her job duties. Finally, in August 2019, Plaintiff shuttered her daycare, sold her house to her son, and moved to Apollo Beach, Florida with her husband (Tr. 30, 52). Plaintiff testified that the weather in Florida eased her symptoms somewhat and that here there is no danger of slipping on ice. She alleged disability due to chronic regional pain syndrome and chronic pain (Tr. 65).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024 (her date last insured, or "DLI") and had not engaged in substantial gainful activity since August 2, 2019, her alleged onset date (and the date she stopped working) (Tr. 26). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had these severe impairments: generalized CRPS, obesity, and adjustment disorder with depressed mood (*Id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*). The ALJ then concluded that, since August 2, 2019, Plaintiff retained the residual functional capacity ("RFC") to perform light work "except the claimant can frequently climb ramps and stairs;

---

[2] Also known as reflex sympathetic dystrophy ("RSD"), CRPS is a chronic condition that causes intense pain, usually in the arms, hands, legs, or feet. Symptoms can include dramatic changes in skin temperature, color, and texture, intense burning pain, extreme skin sensitivity, swelling and stiffness in affected joints, and decreased ability to move the affected body part. CRPS is diagnosed based on symptoms. There is no cure. (*See* https://www.ninds.nih.gov/health-information/disorders/complex-regional-pain-syndrome, last visited January 19, 2024).

can occasionally climb ladders, ropes, and scaffolds; can perform simple tasks, maintain attention, concentration, and pace for 2-hour increments in an 8-hour workday; and can have occasional interaction with coworkers, supervisors, and the general public." (Tr. 29). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 30).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work (Tr. 34). Before September 7, 2021 (the date Plaintiff's age category changed from closely approaching advanced age to advanced age), based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff was not disabled because she could work as a routing clerk, merchandise marker, and a small products assembler (*Id.*). But beginning on September 7, 2021, however, the ALJ found no jobs existed in the national economy that Plaintiff could perform (Tr. 35). Accordingly, the ALJ concluded Plaintiff has been disabled since September 7, 2021, but not before.

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which will likely result in death or which has lasted or will likely last for a continuous period of not less than twelve months. 42 U.S.C.

4

§ 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

5

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues the ALJ – for the period of August 2, 2019 through September 6, 2021 – misconstrued all the medical evidence and the nature of CRPS and disregarded Social Security Ruling 03-2p, which guides ALJs in evaluating claims of disabling CRPS (Doc. 9). As background, Plaintiff's physical medicine and rehabilitation physician, Anne Nadine Maurer, M.D., treated Plaintiff in Minnesota from August 2009 until at least November 2021, and offered three medical opinions: a September 30, 2020 letter, a June

2021 multiple impairment questionnaire, and a November 2021 pain assessment (*see* Tr. 31). In each opinion, Dr. Maurer stated that Plaintiff has suffered from very severe functional limitations related to her CRPS since August 2019, has tried numerous treatments without improvement, and cannot work (*see id*.). The ALJ found Dr. Maurer's opinions not persuasive because they are inconsistent with the physician's own objective findings and with the findings of primary care doctors Okwudili Okpaleke, M.D. and Shabana Siddiqui, M.D. and her Florida-based pain management specialist Rodney Rodrigo, M.D.

In three intertwined arguments, Plaintiff contends the ALJ erred in evaluating Dr. Maurer's opinions, in discounting Plaintiff's subjective pain complaints, and in posing an incomplete hypothetical question to the VE. However worded, the underlying issue is whether the ALJ satisfied her step five burden of proving that Plaintiff was not disabled from August 2, 2019 through September 6, 2021. To meet this burden, the ALJ relied on the testimony of a VE. The ALJ's RFC findings served as a predicate to the hypothetical, so the more succinct question is whether the ALJ meaningfully considered Plaintiff's CRPS in light of SSR 03-2p when formulating both Plaintiff's RFC and the hypothetical question posed to the VE. The undersigned finds she did not.

In cases involving complaints of disabling CRPS, ALJs are directed to SSR 03-2p. According to the ruling, CRPS/RSD is a chronic pain syndrome most often resulting from trauma to a single extremity. SSR 03-2p, 2003 WL 22399117, at *1 (Oct. 20, 2003). In individuals with this syndrome, "the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." *Id*. The ruling instructs that

7

"conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved." *Id*. at *5; *see also Brooks v. Barnhart*, 428 F.Supp.2d 1189, 1191-92 (N.D. Ala. 2006) (summarizing SSR 03-2p). The ruling "repeatedly reminds reviewing officers to carefully consider 'the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Bernstein v. Astrue*, No. 3:09-cv-17-J-34MCR, 2010 WL 746491, at *8 (M.D. Fla. Mar. 3, 2020) (quoting SSR 03-2p). And the signs and symptoms of CRPS may not be "present continuously" or "may be present at one examination and not appear in another." SSR 03-2p, 2003 WL 22399117, at *4. CRPS is a disease for which "a diagnosis necessarily hinges on a plaintiff's subjective symptoms," and where "objective findings can be minimal," therefore "the proper evaluation of plaintiff's subjective pain testimony is crucial." *Bernstein*, 2010 WL 746491, at *8 (citation omitted).

Following the guidance of SSR 03-2p, courts in the Eleventh Circuit have found reversible error when an ALJ relies on the lack of objective medical evidence to discount the subjective complaints of a claimant with CRPS. *See, e.g. Squires v. Comm'r of Soc. Sec.*, 6:20-cv-477-LRH, 2021 WL 4197716, at *6 (M.D. Fla. Sept. 15, 2021); *Volk v. Astrue*, No. 3:11-cv-533-J-TEM, 2012 WL 4466480, at *5 (M.D. Fla. Sept. 27, 2012) (absence of objective medical tests cannot be cited as a legitimate basis for rejecting plaintiff's subjective pain complaints); *Graves v. Comm'r of Soc. Sec. Admin.*, No. 3:11-cv-667-J-MCR, 2012 WL 3715228, at *7 (M.D. Fla. Aug. 28, 2012) (same). Other courts have found error where an ALJ failed to specifically discuss a claimant's CRPS during the analysis of the

8

claimant's credibility, or where the ALJ failed to cite to or address SSR 03-2p, even where (as here) the ALJ finds the impairment to be severe at step two or provides other reasons for discounting the claimant's testimony. *See Squires*, 2021 WL 4197716, at *6 (collecting cases).[3]

After careful review of the record, the undersigned finds that the ALJ did not engage with SSR 03-2p at any point in her analysis and that this error not only undermines the ALJ's consideration of Dr. Maurer's opinions and Plaintiff's RFC, it pulls the substantial evidence rug out from under the ALJ's decision in general. Plaintiff testified that she feels nerve pain throughout her body and that no treatments have helped for any length of time. Stress and activity aggravate her condition to where it hurts "to drink water at any temperature" (Tr. 52), air conditioners and heaters kicking on near her intensify her pain (Tr. 53), and "just people walking by me generates a breeze that most people don't realize and that's painful." (*Id*.). Plaintiff's pain has progressed and "now I can feel all my food being digested. It's an extremely painful feeling that goes through the digestive system and I had never felt that before." (Tr. 53-54). She has trouble sleeping, sunlight hurts her skin, and so does clothing rubbing against her arms and legs. Plaintiff said she relies on her husband to help her with all her daily tasks.

In summarizing Plaintiff's complaints, the ALJ stated:

---

[3] Still other cases find reversible error when the ALJ fails to discuss and analyze a claimant's CRPS at step two in the sequential process. *See Keen v. Kijakazi*, No. 1:21-cv-202/ZCB), 2023 WL 2182966, at *7-8 (N.D. Fla. Feb. 23, 2023) (remanding ALJ's decision for failure to evaluate CRPS at step two and collecting cases); *Plair v. Comm'r of Soc. Sec.*, No. 3:20-cv-0658-MAP, 2022 WL 703013, at *5-6 (M.D. Fla. Mar. 9, 2022) (same).

> In response to a supplemental pain questionnaire, the claimant reported that she experienced constant pain all over her body that limited her ability to complete personal care and household tasks as well as the length of time that she could sit, stand, and walk (Exhibit 3E). In her function report, the claimant reported that she was limited in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, completing tasks, concentration, following instructions, using her hands, and getting along with others (Exhibit 5E). The claimant's testimony was consistent with these allegations.

(Tr. 29). But the ALJ does not specifically discuss Plaintiff's severe impairment of CRPS in evaluating Plaintiff's subjective testimony. Rather, she points out that before Plaintiff's alleged onset date, she "continued to run her daycare business on a daily basis and was not taking any medication" despite her diagnosis (Tr. 30). Her "symptoms were stable" and she "continued to work 12 hour shifts." (*Id.*). Also, Plaintiff's other doctors did not report disabling limitations, and the ALJ noted that once she moved to Florida in 2019, Plaintiff continued to fly back to Minnesota to visit family and for doctors' appointments. (*Id.*).

The ALJ did not cite SSR 03-2p, which is not in and of itself reversible error *if* the ALJ's decision reflects she considered and applied the ruling. Here, the ALJ mentioned CRPS – Plaintiff's over-arching impairment – only three times in her decision: when listing Plaintiff's severe impairments in a heading (Tr. 26), in a summary of Plaintiff's subjective complaints (Tr. 29), and in a recap of Plaintiff's June 2010 appointment with Dr. Maurer when the doctor diagnosed her with CRPS (Tr. 30). Although the ALJ summarized the medical evidence, there is no indication she considered Plaintiff's

impairments or pain complaints through the lens of SSR 03-2p.[4]  *See Squires*, 2021 WL 4197716, at *6-7.  This failure is especially glaring because the ALJ found these medical records at odds with Plaintiff's reported levels of pain and resulting symptoms.

But the medical record is replete with mention of Plaintiff's CRPS diagnosis.  For context, Dr. Maurer began treating Plaintiff soon after her May 2009 accident that injured her left ankle (Tr. 537).  Dr. Maurer diagnosed Plaintiff with CRPS when her injury did not heal as expected and lumbar blocks and chiropractic stimulation exacerbated her pain (Tr. 545).  Dr. Maurer prescribed Lyrica and Vicodin (which Plaintiff eventually discontinued as ineffective) and treated Plaintiff every three to six months for the next six years (Tr. 307-11, 349-57, 431-35, 563-72, 580-87, 608-09, 618-19, 635-37, 768-72, 788-96, 813-26).  During the early days of Plaintiff's diagnosis, Dr. Maurer reported that she moved slowly and stiffly, had mild swelling in her lower extremities, and was hypersensitive in both her upper and lower extremities (Tr. 563).  By October 2010, the pain had "generalized to her arms, cervical, thoracic, low back and leg region.  Pain is [ ] an 8/10 to 9/10.  Timing is constant.  Quality is sharp, stabbing, cramping and burning.

---

[4] Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character."  *Id.*  Adjudicators, as the regulations dictate (*i.e.*, 20 C.F.R. § 404.1529), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.  *Id.*  The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings.  20 C.F.R. § 404.1529.  "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received.  *See* 20 C.F.R. § 404.1513(b)(2)-(6).  Subjective complaint evaluations are the province of the ALJ.  *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Aggravated with tensions, stress, sitting, standing, walking, housework, sunlight on her skin. Nothing appears to alleviate her pain." (Tr. 566).

At her December 2011 recheck, Plaintiff told Dr. Maurer that "Lyrica and gabapentin have not been helpful" so she discontinued them, and "[s]he has been on opioids which have not been helpful." (Tr. 580). In June 2012, Dr. Maurer noted that Plaintiff "[i]n the past, has done physical therapy, acupuncture, TENS unit, trial of biofeedback, chronic pain clinic and medications without any benefit." (Tr. 586). The next option was ketamine therapy, which Dr. Maurer and Plaintiff decided was too risky (Tr. 606).

At her November 2015 re-check, Plaintiff was working fulltime, but "[s]he has been having much significant help from her family who helps her with this daycare. She needs to frequently lie down during the day. She is fatigued and she is tired." (Tr. 618). Then, Plaintiff took a treatment break from November 2015 through December 2017 (Tr. 636). When she returned to Dr. Maurer's care, Plaintiff explained that she continued to operate her daycare fulltime with her retired husband's help, but "working was difficult." (*Id.*). Dr. Maurer observed that Plaintiff "does appear to be able to tolerate light touch better than in the past in the upper and lower extremities." (*Id.*).

All this treatment occurred before Plaintiff's alleged onset date of August 2, 2019. By her September 2019 appointment with Dr. Maurer, Plaintiff had stopped working. She described her pain as constant, aggravated by "bending, bowel movements, coughing, housework, jarring, lifting, reaching, running, sitting, sneezing, standing, stress, tension, twisting, and walking." (Tr. 357). Feeling the sun on her skin caused her pain to flare up,

so she used an umbrella outdoors. In fact, "even light wind on her skin causes a severe flare of her pain, which is to be expected for the diagnosis of [CRPS] with allodynia." (Tr. 357). She had "a shininess to her skin with increased redness of her legs." (*Id*.). The doctor noted that "[n]othing in the past has helped with her pain. She has been through multiple conservative treatments." (*Id*.).

At her next appointment in September 2020, Plaintiff reported she had moved to Florida but was returning to Minnesota for doctors' appointments. Dr. Maurer observed that "[a]s we talk, can see the color changes of her arms and legs with redness. Today, she was able to wear pants, but normally she has difficulty wearing any type of material on her arms and legs." (Tr. 349). The doctor wrote:

> [Plaintiff] has a longstanding history of chronic pain with [CRPS]. She has been through multiple treatments in the past. Initially, she started with an injury to the ankle/leg region. She had undergone subsequent lumbar sympathetic blocks and she did think that she got worse after those blocks. She has done physical therapy. She had tried multiple medications with issues with side effects secondary to the medications including the nerve muscle medications and pain medications, muscle relaxants, tricyclics, anti-inflammatories. She had gone through a pain clinic. She had seen Pain Psychology. She had done alternative treatment including Healing Touch. She had generalized CRPS with color changes and a burning-type sensation throughout her entire body, arms, and legs; hence, even sunlight will aggravate the pain. Pressure along any area of the skin will aggravate her; hence, she has never been able to do acupuncture. She lives with chronic daily pain every day, but as she notes, she has to get on with her life and look happy, otherwise people will not want to be around her. She reports it is very important that she maintains her social contacts since this helps with her chronic pain. She subsequently moved to Tampa, Florida for the improvement of the weather, decrease risk for falls in the winter, and to help with her chronic pain.

(*Id*.).

That same month, Dr. Maurer authored what the parties agree is the first of three medical opinions, a letter detailing the medical history, symptoms, diagnosis, and failed

treatment summarized above (Tr. 428-29).[5]  She opined that Plaintiff could sit for 20 minutes in an eight-hour day, stand for 30 minutes, could not lift or carry over five pounds, and would miss more than three workdays a month (*Id.*).  She reiterated these limitations in a June 2021 multiple impairment questionnaire, circling options indicating that as far back as August 2, 2019, Plaintiff has had good days and bad days, must get up every five to 10 minutes to move around, could never or rarely reach, handle, or finger, and experiences symptoms that would frequently interfere with her ability to pay attention at work (Tr. 310-11).  Dr. Maurer's third medical opinion, dated November 2021, coincides with Plaintiff's last appointment of record (Tr. 789-96).  It is a more detailed check-the-box pain assessment specific to CRPS sufferers.  In short, Dr. Maurer opines Plaintiff's symptoms render her unable to work (*Id.*).

The ALJ found Dr. Maurer's opinions "not persuasive because they are not consistent with the objective findings reported from the physical examinations [Dr. Maurer] completed nor with the reports of Dr. Siddiqui, Dr. Rodrigo, and Dr. Okpaleke."

---

[5] Under 20 C.F.R. § 404.1513, there are five categories of evidence: objective medical evidence ("medical signs, laboratory findings, or both"); medical opinions; other medical evidence; evidence from nonmedical sources; and prior administrative medical findings. A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical demands of work (such as sitting, standing, walking, and lifting), the mental demands of work (such as understanding, remembering, and maintaining concentration, persistence, or pace), "other demands of work" (such as seeing, hearing, or using other senses), and the ability to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2)(i)-(iv).  In contrast, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* at § 404.1513(a)(3).

(Tr. 32). Dr. Siddiqui is a primary care physician in the same Minnesota medical practice as Dr. Maurer who performed three annual physical exams of Plaintiff, in 2018, 2019, and 2020. He noted that his colleague was treating Plaintiff for CRPS, but his exam results were normal (Tr. 444, 464, 502). Plaintiff also treated with Dr. Okpaleke, a Florida-based primary care doctor, to establish care in her new state. She saw Dr. Okpaleke three times (Tr. 735, 737, 811). He noted Plaintiff's symptoms and her own retelling of her treatment history, he asked for copies of Dr. Maurer's records, and he talked with Plaintiff about trying more physical therapy. His physical exam findings were normal (*Id.*). And Florida-based pain management specialist Dr. Rodrigo saw Plaintiff once in November 2020 (Tr. 803-04). Plaintiff recounted to him her years of CRPS symptoms and her treatment with Dr. Maurer. Dr. Rodrigo's findings were normal, but he wrote that together they would "develop a more precise treatment plan once previous medical records and prior treatments are available for review." (Tr. 804).

These physicians' normal exam results are part and parcel to the transitory and "unique clinical syndrome" that is CRPS. SSR 03-2p. Considering that the ALJ did not cite to or refer to SSR 03-2p, did not specifically evaluate Plaintiff's CRPS (other than by passing reference), and did not provide a rationale for this omission, it is unclear if the ALJ was aware of the unique nature of CRPS and the agency's policy for evaluating claims based on it. SSR 03-2p; *see Squires*, 2021 WL 4197716, at *6-7. This error permeated the ALJ's decision: the Court cannot evaluate whether the ALJ properly considered Plaintiff's subjective pain complaints, whether she properly weighed Dr. Maurer's medical opinions, or whether the ALJ's RFC predicate included in the

15

hypothetical posed to the VE (which did not include CRPS-associated pain) was based on substantial evidence. Consequently, the Court finds that the ALJ's decision was not supported by substantial evidence and should be remanded.

IV.

For the foregoing reasons, it is hereby

RECOMMENDED:

1. The Commissioner's decision be REVERSED and REMANDED. On remand, the ALJ should specifically consider SSR 03-2p in evaluating Plaintiff's CRPS and identify what, if any, limitations CRPS placed on her ability to work during the relevant period of August 2, 2019 through September 6, 2021.

2. The Clerk be directed to enter final judgment for PLAINTIFF and close the case.

IT IS SO REPORTED in Tampa, Florida, on January 19, 2024.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.